FILED ___ ENTERED
____ LOGGED _____ RECEIVED
1:37 pm, Apr 30 2021
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF THE FOLLOWING PROPERTIES:<br><br>All monies up to $5,736.00 in M&T BANK ACCOUNT NUMBER 17873970, held in the name of Arthur Beckley;<br><br>All monies up to $7,038.00 in M&T BANK ACCOUNT NUMBER 201649056, held in the name of Carl Robinson;<br><br>All monies up to $14,778.00. in M&T BANK ACCOUNT NUMBER 9876275380, held in the name of Laurent Kala;<br><br>All monies up to $9,120.00 in M&T BANK ACCOUNT NUMBER 9880125399, held in the name of Edgar Mende Encarnacion;<br><br>All monies up to $5,520.00 in M&T BANK ACCOUNT NUMBER 9881673983, held in the name of Moises Mejia;<br><br>All monies up to $5,878.00 in M&T BANK ACCOUNT NUMBER 9881917737, held in the name of Javier Alvarez Donis;<br><br>All monies up to $2,469.00 in M&T BANK ACCOUNT NUMBER 9879730696, held in the name of Emanuel Ngam;<br><br>All monies up to $4,949.00 in M&T BANK ACCOUNT NUMBER 9880198271, held in the name of Kathy Pitman;<br><br>All monies up to $227.00 in M&T BANK ACCOUNT NUMBER 1500424410265, held in the name of Bruce Banks;<br><br>All monies up to $1,298.00 in M&T BANK ACCOUNT NUMBER 9881538087, held in the name of Michael Hansford; | Case No.   1:21-mj-1123 TMD |

All monies up to $28,184.00 in M&T BANK ACCOUNT NUMBER 9882911408, held in the name of Theo Bishop;

All monies up to $1,152.00 in M&T BANK ACCOUNT NUMBER 9874390744, held in the name of Kevin Moore;

All monies up to $3,288.00 in M&T BANK ACCOUT NUMBER 9883008329, held in the name of Joseph B McGinley Jr.;

All monies up to $2,217.00 in M&T BANK ACCOUNT NUMBER 9883810765, held in the name of Nakyeya Austin;

All monies up to $5,560.00 in M&T BANK ACCOUNT NUMBER 9864428405, held in the name of Mary Bedessum;

All monies up to $18,640.00 in M&T BANK ACCOUNT NUMBER 9878710012, held in the name of Shakeem C Coburn;

All monies up to $5,984.00 in M&T BANK ACCOUNT NUMBER 9878838672, held in the name of Malcom C Taylor Jr.;

All monies up to $2,133.00 in M&T BANK ACCOUNT NUMBER 9878958686, held in the name of David Whiters; and

All monies up to $8,928.00 in M&T BANK ACCOUNT NUMBER 9880553152, held in the name of Michael Willoughby.

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Aljuan Carter, a Special Agent with the United States Secret Service, being duly sworn, depose and state:

## AGENT'S BACKGROUND

1. I am a duly appointed Special Agent with the United States Secret Service ("USSS") and have been employed as such since May 2010. Through my employment with the USSS and training, I have gained knowledge in the use of various investigative techniques including the utilization of physical surveillance, undercover agents, confidential informants and cooperating witnesses, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, mobile wireless tracking methods, analyzing telephone pen register and caller identification system data, and the execution of search and arrest warrants, including those executed upon physical addresses as well as those executed upon electronic equipment and data storage providers.

2. Throughout my career in law enforcement and training, I have become familiar with the methods and techniques associated with financial institution fraud and counterfeit trends and tactics. In the course of my training and conducting financial investigations, I have incorporated the use of the following investigative techniques: interviewing informants, cooperating witnesses, victims, and subjects; physical surveillance and utilization of various surveillance techniques; supporting undercover operations; participating in mobile wireless tracking missions; and preparing and executing search and arrest warrants that have led to seizures of counterfeit currency, access devices, and other instruments used to commit financial fraud.

3. Based on my knowledge, training, and experience in the investigation of financial institution fraud, I am familiar with the ways in which fraudsters conduct their business. My familiarity includes the various means and methods by which individuals defraud financial institutions; their use of cellular telephones and social media accounts to facilitate fraud; and their use of code words to describe fraud. I am familiar with the ways that those who commit financial

institution fraud are able to carry out their fraud without detection. Financial institution fraud is commonly an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, crimes such as bank fraud and wire fraud are illicit commercial activities that are characterized by regular, repeated criminal activity.

4. The information set forth below is based upon my review of records and upon information provided by other sworn law enforcement officers participating in this investigation. I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary foundation for the issuance of the seizure warrant for the aforementioned funds.

## PURPOSE OF THE AFFIDAVIT

5. I submit this affidavit in support of the application made by the United States of America for seizure warrants authorizing the seizure of the funds held by M&T Bank ("M&T") in the accounts listed in Attachment A to this affidavit, up to the amount identified in the second column ("Total Deposit of UI Benefits") of Attachment A.

6. The accounts listed in Attachment A have all been identified by M&T as having fraudulently received Unemployment Insurance (UI) payments via ACH or wire transfer. Each of these accounts has a Maryland address listed for the account holder. Accordingly, as explained in more detail below, the funds held in the Accounts listed in Attachment A contain proceeds obtained from wire fraud offenses subject to seizure in this district.

## APPLICABLE LAW

7. Based on the information set forth below, there is probable cause to believe the funds held in the subject accounts contain proceeds of substantive violations of 18 U.S.C.

§ 1343 (wire fraud), and are, therefore, subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

8. Wire fraud is defined in 18 U.S.C. § 1343, which provides, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," shall be guilty of a federal offense.

9. The Court's authority to order forfeiture of the proceeds of violations of 18 U.S.C. § 1343 is found in 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). A "specified unlawful activity," as defined in § 1956(c)(7)(D), includes offenses listed in 18 U.S.C. § 1961(1). Specifically, 1961(1) includes violations of 18 U.S.C. § 1343.

10. Recognizing that money is fungible, 18 U.S.C. § 984 provides that, in a civil forfeiture action against funds in an account in a financial institution, the United States need not identify the specific funds involved in the criminal offense. Rather, "any identical property found in the same account shall be subject to forfeiture," so long as the action against the funds is commenced within "1 year from the date of the offense." 18 U.S.C. § 984. In other words, the United States may forfeit any funds in an account, even if the funds currently in the account were not involved in the relevant criminal activity, so long as the funds forfeited do not exceed the total amount of dirty funds deposited into the account within the past year.

11.     Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe that the property is subject to forfeiture.

## OVERVIEW OF UNEMPLOYMENT INSURANCE FRAUD

12.     On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  This legislation provides emergency assistance and health care response for individuals, families, and businesses affected by the COVID-19 pandemic.

13.     The CARES Act was designed to mitigate the economic effects of the COVID-19 pandemic in a variety of ways. For example, the CARES Act includes a provision of temporary benefits for individuals who have exhausted their entitlement to regular unemployment compensation (UC), as well as coverage for individuals who are not eligible for regular UC, are self-employed, or have limited recent work history. These individuals may also include certain gig economy workers, clergy and those working for religious organizations who are not covered by regular UC, and other workers who may not be covered by the regular UC program under some state laws.

14.     Section 2102 of the CARES Act created a new temporary federal program called Pandemic Unemployment Assistance (PUA) that provides up to 39 weeks of unemployment benefits and funding to states for the administration of the program.

15.     The U.S. Department of Labor, Employment and Training Administration is the federal agency that provides oversight of the Federal-State Unemployment Insurance Program. The Federal-State Unemployment Insurance Program provides unemployment benefits to eligible workers who are unemployed through no fault of their own as determined under state law and who

meet other state eligibility requirements. Unemployment Insurance (UI) payments, also known as benefits, are intended to provide temporary financial assistance.

16. Eligibility for UI, benefit amounts, and the length of time benefits are available are determined by the state law under which an unemployment insurance claim arises. In general, benefits are based on a percentage of an individual's earnings over a recent 52-week period up to a state-established maximum amount. Benefits can be paid for a maximum of 26 weeks in most states.

17. Each state has a different agency that oversees the UI program. For example, in the State of Washington, which issued benefits to six accounts in this Affidavit, the Employment Security Department (ESD) oversees the UI program. The ESD, or its counterpart agency in another state, reviews the online application for UI. UI applicants for Washington benefits must provide, among other things, the claimant's name, date of birth, social security number, and the reason why the claimant is unemployed.

18. The process to apply for UI benefits starts on the relevant state's website. An application is created and self-certified by the applicant. The applicant self-certifies that s/he meets the eligibility criteria for the state. Eligibility criteria for UI vary from state to state. For example, to be eligible for benefits in the State of Washington, the claimant:

   i. Must have been recently employed in the State of Washington in the past 12-18 months for a minimum of 680 hours;

   ii. Must be currently unemployed;

   iii. Must be able and available to work; and

   iv. Must be actively seeking suitable full-time employment.

19. State UI agencies allow individuals to submit an online application for unemployment benefits. For most state agencies, the application requires only a name and valid corresponding social security number. The system allows the claimant to enter the banking information where payments would be sent if the state approves the application and also allows a name other than the claimant's to be inserted as the designated beneficiary of the unemployment funds.

20. The UI compensation funds are most often issued in the form of a direct deposit to a designated bank account or pre-paid debit card account.

21. Approved claimants can also request continuous weekly benefits. To do so, in most states, the claimant must self-certify online every week that s/he remains unemployed and eligible to continue receiving UI benefits.

22. As outlined above, most state UI agencies do not require additional validation or documentation to establish the identity of the claimant, or proof the claimant is eligible for benefits. Many state UI agencies unknowingly issued millions of fraudulent UI benefit payments, including Arizona, Colorado, Illinois, Kansas, Ohio, Texas, and Washington.

23. On or about May 22, 2020, USSS and the Department of the Treasury's Financial Crimes Enforcement Network (FinCEN)[1] issued an alert to all financial institutions, including M&T, stating that multiple state unemployment programs, to include Arizona, Colorado, Illinois, Kansas, Louisiana, Ohio, Tennessee, Texas, and Washington State, had been compromised by unknown individuals who had filed fraudulent applications for benefits and directed those funds to bank accounts across the country. The alert included several fraud indicators to assist the financial institutions in identifying fraudulent transactions, including:

---

[1] FinCEN oversees and implements policies to prevent and detect money laundering.

      i. Account holder name and ACH "remit to" name do not match;

     ii. Account holder resides outside of the issuing state;

    iii. Multiple deposits into one account from the same issuing state;

    iv. Multiple deposits into one account from multiple issuing states; and

     v. Account holders attempt to quickly wire funds to foreign accounts.

24. The above fraud indicators are derived from the state UI programs' rules of eligibility. Even though each state has different eligibility criteria, the above fraud indicators pertain to rules that are common throughout the UI programs. The eligibility criteria are stated on each state's application. If an account is flagged as fraudulent by a financial institution due to one or more of the above fraud indicators, the case is referred to law enforcement to further assess eligibility.

## PROBABLE CAUSE

25. Below are explanations of the UI fraud M&T identified in the accounts listed in Attachment A. In all cases, rapid cash withdrawals and/or withdrawals using mobile payment services (e.g. CashApp or Venmo) were made as soon as the UI money was deposited. All of the accounts below received funds from a UI program where the account holder resides outside of the issuing state. All of the accounts below received funds from a UI program where on the deposit, the account holder name and ACH remit to name did not match. These two fraud indicators are the basis for the law enforcement investigation into each account. Law enforcement checks were performed to verify that the account holders did not work in the issuing state. Law enforcement checks were performed to verify that the account holder is not related to or associated with the ACH "remit to" names on the UI deposits. Based on the facts and my training and experience, I conclude the UI funds in the following accounts were obtained fraudulently.

a. M&T account number ending in 3970 has an account holder of A.B. whose address on file with the bank is in Maryland. This account received two UI ACH deposits from Arizona, each with a different "remit to" name, on June 30, 2020. A law enforcement database search yielded no results for a relationship between A.B. and either of the two "remit to" names listed on the two Arizona UI ACHs, and no evidence A.B. or the "remit to" persons ever worked in Arizona. Based on these facts and my training and experience, I conclude the UI funds in A.B.'s account were obtained based false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Arizona, and none of the parties named in this transaction met the eligibility criteria.

b. M&T account number ending in 9056 has an account holder of C.R. whose address on file with the bank is in Maryland. This account received an UI ACH deposit from Arizona on June 8, 2020. A law enforcement database search yielded no results for a relationship between C.R. and the "remit to" name listed on the Arizona UI ACH, and no evidence C.R. or the "remit to" person ever worked in Arizona. Based on these facts and my training and experience, I conclude the UI funds in C.R.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Arizona, and none of the parties named in this transaction met the eligibility criteria.

c. M&T account number ending in 5380 has an account holder of L.K. whose address on file with the bank is in Maryland. This account received two UI ACH deposits from Arizona on June 8, 2020, each with a different "remit to" name. A law enforcement database search yielded no results for a relationship between L.K. and either of the two

"remit to" names listed on the two Arizona UI ACHs, and no evidence L.K. or the "remit to" persons ever worked in Arizona. Based on these facts and my training and experience, I conclude the UI funds in L.K.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Arizona, and none of the parties named in this transaction met the eligibility criteria.

d. M&T account number ending in 5399 has an account holder of E.M.E. whose address on file with the bank is in Maryland. This account received an UI ACH deposit from Arizona on June 16, 2020. A law enforcement database search yielded no results for a relationship between E.M.E. and the "remit to" name listed on the Arizona UI ACH and no evidence E.M.E. or the "remit to" person ever worked in Arizona. Based on these facts and my training and experience, I conclude the UI funds in E.M.E.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Arizona, and none of the parties named in this transaction met the eligibility criteria.

e. M&T account number ending in 3983 has an account holder of M.M. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on August 25, 2020. A law enforcement database search yielded no results for a relationship between M.M. and the "remit to" name listed on the Arizona UI ACH and no evidence M.M. or the "remit to" person ever worked in Arizona. Based on these facts and my training and experience, I conclude the UI funds in M.M.'s account were obtained based on false or fraudulent statements on the UI online application because

    the applicant had to certify eligibility for the Unemployment Insurance program in Arizona, and none of the parties named in this transaction met the eligibility criteria.

f. M&T account number ending in 7737 has an account holder of J.A.D. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on July 21, 2020. A law enforcement database search yielded no results for a relationship between J.A.D. and the "remit to" name listed on the Arizona UI ACH and no evidence J.A.D. or the "remit to" person ever worked in Arizona. Based on these facts and my training and experience, I conclude the UI funds in J.A.D.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Arizona, and none of the parties named in this transaction met the eligibility criteria.

g. M&T account number ending in 0696 has an account holder of E.N. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on June 4, 2020. A law enforcement database search yielded no results for a relationship between E.N. and the "remit to" name listed on the Colorado UI ACH and no evidence E.N. or the "remit to" person ever worked in Colorado. Based on these facts and my training and experience, I conclude the UI funds in E.N.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Colorado, and none of the parties named in this transaction met the eligibility criteria.

h. M&T account number ending in 8271 has an account holder of K.P. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on June 4, 2020. A law enforcement database search yielded no results for a relationship

between K.P. and the "remit to" name listed on the Colorado UI ACH and no evidence K.P. or the "remit to" person ever worked in Colorado. Based on these facts and my training and experience, I conclude the UI funds in K.P.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Colorado, and none of the parties named in this transaction met the eligibility criteria.

i. M&T account number ending in 0265 has an account holder of B.B whose address on file with the bank is in Maryland. This account received an UI ACH deposit on August 26, 2020. A law enforcement database search yielded no results for a relationship between B.B. and the "remit to" name listed on the Colorado UI ACH and no evidence B.B. or the "remit to" person ever worked in Colorado. Based on these facts and my training and experience, I conclude the UI funds in B.B.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Colorado, and none of the parties named in this transaction met the eligibility criteria.

j. M&T account number ending in 8087 has an account holder of M.H. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on November 24, 2020. A law enforcement database search yielded no results for a relationship between M.H. and the "remit to" name listed on the Colorado UI ACH and no evidence M.H. or the "remit to" person ever worked in Colorado. Based on these facts and my training and experience, I conclude the UI funds in M.H.'s account were obtained based on false or fraudulent statements on the UI online application because

the applicant had to certify eligibility for the Unemployment Insurance program in Colorado, and none of the parties named in this transaction met the eligibility criteria.

k. M&T account number ending in 1408 has an account holder of T.B. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on July 2, 2020. A law enforcement database search yielded no results for a relationship between T.B. and the "remit to" name listed on the Illinois UI ACH and no evidence T.B. or the "remit to" person ever worked in Illinois. Based on these facts and my training and experience, I conclude the UI funds in T.B.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Illinois, and none of the parties named in this transaction met the eligibility criteria.

l. M&T account number ending in 0744 has an account holder of K.M. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on January 7, 2021. A law enforcement database search yielded no results for a relationship between K.M. and the "remit to" name listed on the Kansas UI ACH and no evidence K.M. or the "remit to" person ever worked in Kansas. Based on these facts and my training and experience, I conclude the UI funds in K.M.'s account were obtained based on the following false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Kansas, and none of the parties named in this transaction met the eligibility criteria.

m. M&T account number ending in 8329 has an account holder of J.M. whose address on file with the bank is in Maryland. This account received three UI ACH deposits on October 7, 2020. A law enforcement database search yielded no results for a

    relationship between J.M. and any of the three "remit to" names listed on the Ohio UI ACHs and no evidence J.M. or the "remit to" persons ever worked in Ohio. Based on these facts and my training and experience, I conclude the UI funds in J.M.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Ohio, and none of the parties named in this transaction met the eligibility criteria.

n. M&T account number ending in 0765 has an account holder of N.A. whose address on file with the bank is in Maryland. This account received two UI ACH deposits from Texas, each with a different "remit to" name, on September 9, 2020 and September 15, 2020. A law enforcement database search yielded no results for a relationship between N.A. and either of the two "remit to" names listed on the Texas UI ACHs, and no evidence N.A. or the "remit to" persons ever worked in Texas. Based on these facts and my training and experience, I conclude the UI funds in N.A.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Texas, and none of the parties named in this transaction met the eligibility criteria.

o. M&T account number ending in 8405 has an account holder of M.B. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on May 12, 2020. A law enforcement database search yielded no results for a relationship between M.B. and the "remit to" name listed on the Washington State UI ACH and no evidence M.B. or the "remit to" person ever worked in Washington. Based on these facts and my training and experience, I conclude the UI funds in M.B.'s account were

obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Washington, and none of the parties named in this transaction met the eligibility criteria.

p. M&T account number ending in 0012 has an account holder of S.C. whose address on file with the bank is in Maryland. This account received two UI ACH deposits on May 12, 2020 and May 13, 2020. A law enforcement database search yielded no results for a relationship between S.C. and either of the two "remit to" names listed on the Washington State UI ACHs, and no evidence S.C. or the "remit to" persons ever worked in Washington. Based on these facts and my training and experience, I conclude the UI funds in S.C.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Washington, and none of the parties named in this transaction met the eligibility criteria.

q. M&T account number ending in 8672 has an account holder of M.T. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on May 7, 2020. A law enforcement database search yielded no results for a relationship between M.T. and the "remit to" name listed on the Washington State UI ACH and no evidence M.T. or the "remit to" person ever worked in Washington. Based on these facts and my training and experience, I conclude the UI funds in M.T.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in

      Washington, and none of the parties named in this transaction met the eligibility criteria.

r. M&T account number ending in 8686 has an account holder of D.W. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on May 5, 2020. A law enforcement database search yielded no results for a relationship between D.W. and the "remit to" name listed on the Washington State UI ACH and no evidence D.W. or the "remit to" person ever worked in Washington. Based on these facts and my training and experience, I conclude the UI funds in D.W.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Washington, and none of the parties named in this transaction met the eligibility criteria.

s. M&T account number ending in 3152 has an account holder of M.W. whose address on file with the bank is in Maryland. This account received an UI ACH deposit on May 12, 2020. A law enforcement database search yielded no results for a relationship between M.W. and the "remit to" name listed on the Washington State UI ACH and no evidence M.W. or the "remit to" person ever worked in Washington. Based on these facts and my training and experience, I conclude the UI funds in M.W.'s account were obtained based on false or fraudulent statements on the UI online application because the applicant had to certify eligibility for the Unemployment Insurance program in Washington, and none of the parties named in this transaction met the eligibility criteria.

## CONCLUSION

26.    Based on the foregoing, I submit that there is probable cause to believe that the funds held in the subject bank accounts are forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) as derived from proceeds traceable to violations of 18 U.S.C. § 1343 (Wire Fraud).

27.    Wherefore, it is hereby requested that Special Agents of the United States Secret Service be authorized to seize, pursuant to 18 U.S.C. § 981(b), the funds in the accounts listed in Attachment A.

_____
Aljuan Carter
Special Agent
United States Secret Service

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3)

this ____15____ day of April, 2021.

_____
The Honorable Thomas M. DiGirolamo
United States Magistrate Judge

Attachment A

| State of UI Benefit | Total Deposit of UI Benefits | Date(s) of Deposit | M&T Account Number | M&T Account Holder Name | Account Primary Address | "Remit to" Name(s) |
|---|---|---|---|---|---|---|
| Arizona | $5,736.00 | 06/30/20 | 178873970 | Arthur Beckley | 16911 Doctor Moore Crt Poolesville, MD | Jonathan Mclemore; Chelsea Broussard |
| Arizona | $7,038.00 | 06/08/20 | 201649056 | Carl Robinson | 3401 Brooks Ave Abingdon, MD | Charlotte Agee |
| Arizona | $14,778.00 | 06/08/20 | 9876275380 | Laurent Kala | 18501 Owl Run Way Germantown, MD | Kisha Clark; Wanquado Brown |
| Arizona | $9,120.00 | 06/16/20 | 9880125399 | Edgar Mendez Encarnacion | 2306 Georgian Way Apt 23 Wheaton, MD | Wangelin Serena |
| Arizona | $5,520.00 | 08/25/20 | 9881673983 | Moises Mejia | 3115 Benton Square Dr Olney, MD | Larry Vedas |
| Arizona | $5,878.00 | 07/21/20 | 9881917737 | Javier Alvarez Donis | 900 Young Pl Frederick, MD | Carmen McGory |
| Colorado | $2,469.00 | 06/04/20 | 9879730696 | Emmanuel Ngam | 12401 Brickyard Blvd Apt 1108 Beltsville, MD | Sheena Foster |
| Colorado | $4,949.00 | 06/04/20 | 9880198271 | Kathy Pitman | 13016 Conductor Way Silver Spring, MD | Sarah Cannon |
| Colorado | $227.00 | 08/26/20 | 15004244110265 | Bruce Banks | 204 Virginia Ave Baltimore, MD | Doug Brush |
| Colorado | $1,298.00 | 11/24/20 | 9881538087 | Michael Hansford | 5234 Hesperus Dr Columbia, MD | Tara Manion |
| Illinois | $28,184.00 | 07/02/20 | 9882911408 | Theo Bishop | 4310 Pinefield Ct Randallstown, MD | Kim Cortez |
| Kansas | $1,152.00 | 01/07/21 | 9874390744 | Kevin Moore | 88 Tarragon Lane Edgewater, MD | Scott Hendrick |
| Ohio | $3,288.00 | 10/07/20 | 9883008329 | Joseph McGinley | 7504 A Lange St Baltimore, MD | Tennia Reid; Sharon Southern; Ray Mckinney |
| Texas | $2,217.00 | 09/09/20 | 9883810765 | Nakyeya Austin | 4015 Sinclair Lane Baltimore, MD | Pamela Eslinger; Nancy Dowd |
| Washington | $5,560.00 | 05/12/20 | 9864428405 | Mary Bedessem | 55 Manor Dr Apt 201 Hagerstown, MD | Toby Bond |
| Washington | $18,640.00 | 5/12/20 5/13/20 | 9878710012 | Shakeem Coburn | 6501 Maureen Ct Cheverly, MD | Michael Ruhland; David Swart |

19

1:21-mj-1123 TMD

| | | | | | |
|---|---|---|---|---|---|
| Washington | $5,984.00 | 05/07/20 | 9878838672 | Malcolm Taylor Jr | 601 Pennington Ave Apt 205 Havre de Grace, MD | Lina Aaf |
| Washington | $2,133.00 | 05/05/20 | 9878958686 | David Whiters | 3314 Ingleside Ave Baltimore, MD | Clair McQueen |
| Washington | $8,928.00 | 05/12/20 | 9880553152 | Michael Willoughby | 502 Juniper St Salisbury, MD | Paul Saline |

20